IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ROBERT D. ALLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 6:10cv00035 |
| v. | ) |
| | ) By: Hon. Michael F. Urbanski |
| MICHAEL J. ASTRUE, | ) United States District Judge |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Robert D. Allen ("Allen") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). On September 10, 2000, Allen was injured in a motorcycle accident in which he lost his left leg. Allen has filed three DIB applications since that time, all of which were denied by the Commissioner. Allen did not appeal the first two denials of his claim but did appeal the third. The Administrative Law Judge ("ALJ") dismissed Allen's request for a hearing on administrative res judicata grounds, and the Appeals Council denied his request for review. In the instant suit, Allen challenges the Commissioner's denial of his third claim for benefits.

This matter is currently before the court on the Commissioner's Motion for Summary Judgment (Dkt. # 31) and plaintiff's Motion for Remand (Dkt. # 33). The court previously denied a motion to dismiss for lack of jurisdiction filed by the Commissioner because it was premature. By Order dated August 4, 2011, the court set forth a summary judgment briefing schedule and directed the Commissioner to file the administrative transcripts relating to

plaintiff's three DIB applications. The transcripts have been filed and the issues briefed. This matter is now ripe for adjudication.

## I.

Allen filed his first DIB application on November 20, 2002, alleging disability beginning September 10, 2000 stemming from the injuries he sustained in a motorcycle accident. (R. 45-47, 54.) Allen's claim was denied on March 13, 2003. (R. 37.) The Notice of Disapproved Claim states:

> The evidence shows you had an above the knee amputation and depression. Additional evidence was needed to document the seriousness of your condition. For that reason you were sent 2 letters as well as a letter was sent to the third party contact that you listed requesting that you contact your disability determination analyst regarding a special medical examination for you, and you and your third party did not respond.
>
> The evidence needed to decide your claim is not available to us. You have not cooperated in obtaining the evidence necessary to show you are disabled so your claim for benefits must be denied.

(R. 37-38.) Allen did not appeal this denial.

Allen filed a second DIB application on October 10, 2007, alleging disability as of September 10, 2000 due to amputation of the left leg above the knee and bipolar disorder. (R. 190-92, 212.) This application was denied by the Commissioner on March 6, 2008. (R. 28, 185.) The Notice of Disapproved Claim states:

> The evidence shows that your left leg was amputated. However, with the use of a properly fitted prosthesis, you are able to walk without crutches or a cane. Although you experience pain, you are able to stand and walk within a normal work day. The evidence shows that your condition has not affected your ability to understand, remember cooperate with others or perform normal daily activities. The evidence shows no other condition which significantly limits your ability to work.

> We realize that your condition kept you from doing the type of work that you have done in the past, but during the time you were insured for disability benefits, your condition did not keep you from doing less demanding work.

(R. 28, 185.) Again, Allen did not appeal this denial.

On February 20, 2009, Allen filed a third DIB application. (R. 335-36.) In this application, Allen again alleged disability as of September 10, 2000, due to amputation of the left leg above the knee, bipolar disorder and depression. (R. 335, 338, 355.) On April 27, 2009, the Commissioner denied the claim, stating:

> You do not qualify for benefits because this application concerns the same issues which were decided when an earlier claim was denied. We do not have any information which would cause us to change our earlier decision.
>
> The information you gave us does not show that there was any change in your health before June 2006. This was when you last met the earnings requirement for receiving benefits.

(R. 20.) Unlike his earlier applications, Allen challenged this denial up the administrative ladder. On June 30, 2009, Allen's claim was denied upon reconsideration for the same reason set forth in the initial denial of his claim. (R. 15-17.) Allen then appealed the denial to an ALJ, who dismissed Allen's request for a hearing on administrative res judicata grounds, reasoning as follows:

> The record shows that the claimant previously filed an application for a period of disability and disability insurance benefits that was denied in a decision dated March 6, 2008. That decision, which was issued after the claimant's insured status expired on June 30, 2006, became administratively final because the claimant did not request review within the stated time period.
>
> The undersigned has considered whether this decision should remain final and finds no reason why it should not. In this regard, the deadline for requesting review should not be extended under Social Security Ruling 91-5p because at the time of the previous decision, the claimant did not have or allege having a mental

3

> impairment. Additionally, none of the conditions for reopening set forth in 20 CFR 404.988 is present in this case. Accordingly, the previous decision remains final and binding.
>
> The question therefore becomes whether the same facts and same issues are involved. The undersigned has compared the evidence considered in reaching the previous decision with that relating to the claimant's current claim. Based on this comparison, the undersigned finds that no new and material evidence has been submitted and that there has been no change in statute, regulation, ruling or legal precedent concerning the facts and issues ruled upon in connection with the previously adjudicated period. Additionally, as already stated, the claimant's insured status expired prior to the previous decision. Accordingly, the claimant's rights on the same facts and on the same issues are involved and the doctrine of *res judicata* applies.

(R. 9-10.) The ALJ went on to cite instances in the record where Allen told his healthcare providers that he was working in construction after his date last insured. The ALJ concluded that "[t]he current record does not reflect that the claimant was completely disabled through his date last insured, even in the absence of *res judicata*." (R. 10.) The Appeals Council affirmed the ALJ's decision on May 19, 2010 (R. 1-2), and Allen filed the instant suit.

In his motion for remand, Allen contends that the Commissioner improperly applied the doctrine of res judicata to Allen's third claim for benefits, arguing his third application contains new and material medical evidence. Specifically, Allen points to evidence from Dr. Alan Podosek from 2003 and 2004; Centra Health records from 2003; a psychological evaluation by Dr. William Wellborn, III, Ph.D., on September 19, 2000; and records from Roanoke Memorial Hospital and Rehabilitation Center from 2000. Pl.'s Mem. In Support of Mot. for Remand, Dkt. # 34, at 3. Allen further argues that because his third application for benefits was filed within twelve months of the denial of his second application, his claim could have been reopened for any reason, and thus should have been reopened pursuant to 20 C.F.R. § 404.988. Id. at 4. Finally, plaintiff claims the ALJ constructively reopened his second application for disability

4

benefits by considering the merits of that claim, because he analyzed and evaluated medical records from the Veterans Administration Medical Center. Id. at 4. Therefore, plaintiff argues that the ALJ inappropriately applied administrative res judicata and asks the court to remand the case for an administrative hearing. Id. at 5-6.

For his part, the Commissioner has filed a motion for summary judgment, arguing administrative res judicata was applied appropriately and that the Commissioner neither constructively reopened, nor was he required to reopen, Allen's prior claim. Therefore, the Commissioner asks the court to dismiss this case for lack of subject matter jurisdiction.

## II.

The doctrine of res judicata, or claim preclusion, bars "'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits.'" United States v. Tohono O'Odham Nation, ___ U.S. ___, 131 S. Ct. 1723, 1730 (2011) (quoting Comm'r v. Sunnen, 333 U.S. 591, 597 (1948)). The purpose of this doctrine is to "'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" Smith v. McClure, No. 6:10cv00022, 2010 WL 2326536, at *3 (W.D. Va. June 8, 2010) (quoting Bouchat v. Bon-Ton Dep't Stores, Inc., 506 F.3d 315, 326 (4th Cir. 2007)), aff'd 396 F. App'x 961 (4th Cir. 2010), cert. denied, 131 S. Ct. 1493 (2011). It is "well-established that fundamental and familiar principles of *res judiciata* apply in Social Security disability cases." Lively v. Sec'y of Health & Human Servs., 820 F.2d 1391, 1392 (4th Cir. 1987) (citing Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982)).

In McGowen v. Harris, 666 F.2d 60, 65 (4th Cir. 1981), the Fourth Circuit outlined a series of principles drawn from various decisions of the Supreme Court and the Fourth Circuit, as

5

well as from relevant statutes and regulations, that guide a district court in examining the application of administrative res judicata in the social security context. The court stated first that, by virtue of 42 U.S.C. § 405(g) and (h), the Commissioner has the power to apply administrative res judicata in bar of any social security claim that has been earlier denied on the merits by a final administrative decision. Id. "An earlier administrative decision at any level in the adjudicative process may be final and therefore properly treated as preclusive of a subsequent claim either because the decision has been judicially affirmed or because administrative reconsideration, hearing, or review, or judicial review has not been timely sought." Id. The Commissioner "may properly apply administrative res judicata in bar only if it is the 'same' claim earlier denied." Id. But even if it is the same claim, the Commissioner has the ability to reopen the claim and consider it on the merits if certain conditions are met. Id.; see 20 C.F.R. §§ 404.988, 404.989.

If indeed the subsequent claim involves the same claim earlier denied, the district court lacks jurisdiction under 42 U.S.C. § 405(g) to engage in judicial review of the Commissioner's decision not to reopen the claim or to apply administrative res judicata. McGowen, 666 F.2d at 65. There are two exceptions to this rule. If a constitutional objection is raised in the district court, the court can engage in judicial review. Id.; see Shrader v. Harris, 631 F.2d 297, 300 (4th Cir. 1980) ("Adjudication of constitutional questions remains as an exception to the rule against judicial review."). The second exception applies if the claim has been "reconsidered on the merits to any extent and at any administrative level," in which case it is treated as having been constructively reopened as a matter of administrative discretion, and the court can engage in judicial review to the extent of the reopening. McGowen, 666 F.2d at 65-66.

As set forth in detail below, the court finds that Allen's third DIB application involves the same claim earlier denied and that res judicata was applied properly. Because the constitutional issue raised by Allen on appeal was dismissed previously, see Memorandum Opinion, Dkt. # 25, at § II, and because the Commissioner did not constructively reopen Allen's second DIB claim, the court lacks judicial review and this case must be dismissed.

### A.

When a claimant files a subsequent claim following a final administrative decision on the merits, the Commissioner can apply administrative res judicata in bar of the subsequent claim "only if it is the 'same' claim earlier denied." McGowen, 666 F.2d at 65. "Whether it is the same claim must necessarily be determined according to general principles of res judicata respecting the scope of a claim for purposes of merger and bar as adapted to the social security claim context." Id. (citing Restatement (Second) of Judgments § 61 (1980)); see also 20 C.F.R. § 404.957(c)(1) (ALJ may dismiss a hearing request if the doctrine of res judicata applies in that "we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action"). "'To the extent that a second or successive application seeks to relitigate a time period for which the claimant was previously found ineligible for benefits, the customary principles of preclusion apply with full force.'" Doyle v. Astrue, No. 6:10-46-KFM, 2011 WL 692217, at *8 (D.S.C. Feb. 18, 2011) (quoting Albright v. Comm'r, 174 F.3d 473, 476 n.4 (4th Cir. 1999)).

In the instant case, the Commissioner denied Allen's second application for benefits on March 6, 2008, finding Allen was not entitled to benefits during the entire period of his eligibility, from his alleged onset date of September 10, 2000 through June 30, 2006, his date last

7

insured.[1] (R. 28.) Allen did not appeal this determination, and it therefore became final. 20 C.F.R. § 404.905. Allen's third application for benefits, which is now before the court, alleges an onset date of September 10, 2000. His date last insured remains June 30, 2006. Thus, his third application involves the exact same time period previously adjudicated by the Commissioner. Cf. Albright, 174 F.3d at 476 ("'Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994.'" (quoting Groves v. Apfel, 148 F.3d 809, 810 (7th Cir. 1998) (Posner, C.J.))).

Moreover, Allen's third application for benefits involves the same facts and issues as the prior final decisions. In all three of his claims for benefits, Allen alleged amputation of his left leg as a disabling condition. (R. 54, 212, 355.) In his second application, Allen also listed bipolar disorder as a condition that limited his ability to work. (R. 212.) In his third application for benefits, Allen listed "bipolar/depression," as a condition that limited his ability to work. (R. 355.) To the extent Allen argues the addition of depression as an allegedly disabling condition in his third application renders this third claim different from the second, his argument fails, as the Commissioner took Allen's depression into account in ruling on the second DIB claim.

The medical evidence filed in connection with Allen's second DIB application consists entirely of records from the Salem Veterans Administration Medical Center ("VAMC"). Although there are no treatment notes dated prior to June 30, 2006, Allen's date last insured, the VAMC records document a diagnosis of depressive disorder in May, 2006 (R. 250), and note his history of depression and bipolar disorder. (R. 313, 315, 317.) The records suggest that Allen's

---

[1] Allen must prove that he became disabled on or before his date last insured in order to establish a DIB claim. See Kasey v. Sullivan, 3 F.3d 75, 77 n.3 (4th Cir. 1993) ("In order to receive disability insurance benefits, Kasey was required to establish a disability prior to the expiration of his insured status." (citing 42 U.S.C. § 423(c) and 20 C.F.R. §§ 404.101-404.132)). In this case, Allen's date last insured is June 30, 2006.

depressive symptoms are related to his well-documented bipolar disorder. Allen stated that bipolar disorder has caused him to experience mood swings "all of his life which typically begin with feeling 'hyper' and 'great' for a few months followed by feeling deeply depressed for several weeks." (R. 270.) Allen described his mood as "a rollercoaster," (R. 278), and the medical records seem to document this pattern of highs and lows. (See, e.g., R. 313.) The records indicate Allen was "currently depressed" and reported occasional feelings of hopelessness and helplessness. (See, e.g., R. 310, 313, 315, 318.) The treatment notes repeatedly reference Allen's feelings of worthlessness following the accident, noting he felt he was "half the man he used to be" before he was injured. (R. 276, 278, 289, 296, 291, 310.) His Global Assessment of Functioning[2] vacillated between 50 and 55 in late 2006 through mid-2007 (R. 299, 301, 309, 311, 314, 316, 319), when it dropped to 49 in June, 2007 and then to 45 in August, 2007.[3] (R. 291, 297.) At times, however, Allen denied pervasive depressed mood, feelings of hopelessness or helplessness, and crying spells, and stated he was feeling better and his mood was improved. (See, e.g., R. 253, 278.) Allen said he was "hopeful that his depression would continue to resolve." (R. 301, 309.) His psychiatrist noted his medication regimen was "start[ing] to target his depressive symptoms and bipolarity, in addition to some benefit in pain control," (R. 310), and after adding a prescription for Prozac in early 2008, Allen reported that he "continues to feel better with improved mood . . . He continues to be quite pleased with that

---

[2] The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social and occupational functioning on a hypothetical continuum of mental health illness. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev. 2000) (hereinafter "DSM-IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id. A GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id.

[3] The records suggest that the decline in Allen's mood during this period may be attributed to the fact that he stopped taking a mood stabilizer and a pain medication for various reasons. (R. 291, 296.)

turnaround and feels that the addition of Prozac may have made the difference." (R. 250.) A state agency psychiatrist, Howard S. Leizer, Ph.D., reviewed these VAMC records on March 5, 2008, and determined that Allen's bipolar disorder was a non-severe impairment. (R. 222-34.) Notably, there are numerous references in the records to Allen working throughout this time period, suggesting his mental impairment in fact did not limit his ability to work. (R. 290, 292, 296, 298, 300, 305, 309, 310.) For example, treatment notes from September, 2006 indicate Allen "enter[ed the] clinic and state[d] that he works full time in construction." (R. 319.) Notes from April, 2007 state that Allen "feels out of his depressive episode and that he has been feeling good and is able to work about 10 hours a day, as a contractor supervising other construction workers." (R. 298.) Records from June, 2007 reveal Allen "continues to work in construction as a contractor and reports working at least five days a week." (R. 292.)

The medical records submitted in connection with Allen's first disability application also reference Allen's "frequent periods of depression" in the months following the September, 2000 accident. (R. 126.) Dr. Kelly noted in November, 2000 that Allen was "responding well to Zoloft." (R. 125.) One year later, Dr. Kelly's notes reflect Allen still suffered from "post trauma depression." (R. 120.) VAMC notes from December, 2002 state Allen reported "some symptoms of depression" as well as "some periods of almost manic behavior from time to time as well." (R. 139.) Notes from Johns Hopkins, where Allen participated in a trial phantom pain study, reveal his past medical history was significant for depression. (R. 153.)

The record makes clear that Allen's depressive symptoms were taken into account in his prior applications for benefits. The evidence of depression submitted in connection with Allen's third DIB application is cumulative. For example, the October 29, 2000 Psychological Evaluation from William Wellborn, III, Ph.D., shows only that Allen was diagnosed with "[b]rief

depressive reaction (due to recent accident and loss of left leg)." (R. 412.) Noting Allen is a prime candidate for development of a more clinically significant depression, Dr. Wellborn advised that health care professionals monitor Allen's condition and that Allen seek professional counseling and possibly medication. (R. 412.) The VAMC records indicate Allen did just that. (See R. 253, 261, 269.) Other medical records submitted with Allen's third application simply reference the fact that Allen was treated conservatively for depression with Xanax, Zoloft, and Lexapro, even prior to his September, 2000 accident. (See R. 378, 379, 389.) This evidence of depression does not suggest that Allen's mental condition worsened during the relevant period or that his third claim for benefits differs from his prior claims.

Indeed, none of the evidence filed in connection with Allen's third application is new and material. Many of these medical records are duplicative of those submitted with his first application, which document the traumatic amputation of his left leg and the physical therapy and rehabilitation that were required after his 2000 motorcycle accident. The remaining medical records filed in connection with Allen's third DIB application are primarily progress notes from physical therapy, occupational therapy and rehabilitation, as well as lab reports, from the period following his accident. Rehabilitation notes reveal Allen had an excellent response to treatment after the accident (R. 396, 409), was independent (R. 401, 403), all of his goals were met (R. 394), and that he "progressed very quickly in rehab." (R. 394.) Additionally, when he was discharged from physical therapy in 2003, "all goals were met," and Allen reported "100% improvement" in lower back pain and right leg pain. (R. 380.) This evidence is consistent with the progress notes contained in Allen's first disability application from the months following the accident, which show that his phantom pain was improving; he had full range of motion in his hip flexion, extension and abduction; and his motor strength was 5/5. (R. 123, 124, 125, 126.)

By March, 2001 he was noted to be "doing well" and tolerating use of his prosthesis about six hours at a time. (R. 122.)

Given this record, the court finds that the relevant time period – September 10, 2000 to June 30, 2006 – was adjudicated previously by the Commissioner, and the same parties, material facts, and issues raised in Allen's third DIB application were involved in the prior decisions. Thus, evidence supports the Commissioner's conclusion that Allen's third disability claim constitutes the same claim as that earlier filed. Doyle, 2011 WL 692217, at *8 (holding the ALJ's findings were entitled to res judicata effect where "the time period between January 17, 2002 and November 26, 2004, was specifically considered in the 2004 decision, and the same parties, material facts, and issues were involved in that prior final decision."). Res judicata was applied properly in this case.

### B.

Even if res judicata is applied properly, however, the court has jurisdiction to review on the merits a claim that is "reconsidered on the merits in exercise of administrative discretion." McGowen, 666 F.2d at 67 (citing Farley v. Califano, 599 F.2d 606 (4th Cir. 1979)). Such claims are said to have been reopened by the Commissioner constructively or de facto. But simply addressing evidence purported to be "new and material" does not amount to constructive reopening of a claim.

> Of necessity when a social security claimant presents any claim that is arguably the same one earlier denied on the merits, the Secretary must in fairness look far enough into the proffered factual and legal support to determine whether it is the same claim, and if so, whether it should nevertheless be reopened as a discretionary matter.

Id. at 67. Thus, "[t]he Commissioner 'must be afforded some leeway in making a decision whether to reopen,'" Hughes v. Chater, 114 F.3d 1176, 1997 WL 303231, at *3 (4th Cir. June 5,

12

1997) (unpublished table decision) (quoting Hall v. Chater, 52 F.3d 518, 521 (4th Cir. 1995)), or whether to apply res judicata. McGowen, 666 F.2d at 67.

Here, the ALJ expressly declined to reopen Allen's second application as a matter of discretion, stating: "The undersigned has considered whether this decision should remain final and finds no reason why it should not. . . . [N]one of the conditions for reopening set forth in 20 CFR 404.988 is present in this case. Accordingly, the previous decision remains final and binding." (R. 9.) The ALJ held that after comparing the evidence considered in connection with the Commissioner's second decision with that relating to Allen's third DIB claim, he found "the claimant's rights on the same facts and on the same issues are involved and the doctrine of res judicata applies." (R. 9-10.)

The ALJ went on to state in his opinion that the VAMC treatment records submitted in connection with Allen's second application indicate that Allen was working in construction after his date last insured. (R. 10.) The ALJ cited to a number of specific instances in the record where Allen told his healthcare providers that he was working. (R. 10.) The ALJ concluded that the record did not reflect that Allen was completely disabled through his date last insured, even in the absence of res judicata. (R. 10.)

It is this conclusion that gives rise to Allen's argument that his prior application was constructively reopened by the ALJ. Pl.'s Mem. In Support of Mot. for Remand, Dkt. # 34, at 4. Allen claims on brief that because the ALJ "analyze[d] and evaluate[d]" the VAMC records, "reference[d] and summarize[d] multiple visits at the VA Medical Center," and rendered opinions regarding the VAMC records, he considered the merits of the claim and therefore constructively reopened Allen's second claim for DIB. Id. at 5.

Read in isolation, the ALJ's statement that the record does not support a finding of total disability is suggestive, perhaps, of a determination on the merits. But the ALJ did not go so far as to constructively reopen Allen's second claim. For one thing, the ALJ expressly declined to reopen the claim, finding "none of the conditions for reopening set forth in 20 CFR. 404.988 is present in this case." (R. 9.) See Oliva v. Chater, 96 F.3d 1441, 1996 WL 511679, at *2 (5th Cir. 1996) (unpublished decision) ("[T]he 'reopened constructively' contention is rebutted directly by the ALJ's statement that the application was not reopened because of insufficient evidence to justify it."); King v. Chater, 90 F.3d 323, 325 (8th Cir. 1996) (finding no constructive reopening where ALJ "expressly noted that good cause to reopen King's earlier application did not exist," notwithstanding "seemingly contradictory statement" by ALJ that the initial denial "is hereby reopened"); see also Scott v. Chater, 68 F.3d 484, 1995 WL 600498, at *2 (10th Cir. Oct. 12, 1995) (unpublished decision) (finding prior application had not been constructively reopened, and noting "[h]ere, the ALJ clearly stated that there was no evidentiary basis for reopening claimant's prior application").

Additionally, the ALJ specifically held that res judicata applies in this case. The last line of his November 3, 2009 opinion states: "Because the doctrine of *res judicata* applies, the request for hearing dated July 27, 2009, is dismissed." (R. 10.) The express application of res judicata distinguishes this case from others in which the ALJ was said to have reopened prior proceedings. For example, in Taylor ex rel. Peck v. Heckler, 738 F.2d 1112 (10th Cir. 1984), the court noted that the ALJ "did not dispose of Taylor's second application on the basis of *res judicata*, nor did he specifically decline to reopen the decision." Id. at 1115. Rather, the ALJ held "the only evidentiary hearing in the entire history of the case" in which "[t]estimony was taken, exhibits received, closing arguments were made by opposing counsel, and a formal

decision was rendered." The court stated: "That, to us, constitutes a *de facto* reopening." Id. Likewise, in Brown v. Heckler, 565 F. Supp. 72 (E.D. Wisc. 1983), the court held that the prior proceeding had been de facto reopened and the res judicata defense waived where:

> The record reveals that the administrative law judge (ALJ) at no time ruled that the second application should be dismissed on res judicata grounds. Although he noted that the denial of the plaintiff's previous application had become final, he nevertheless proceeded to evaluate the evidence and to decide the matter on the merits. The ALJ's decision was based on his review of the evidence in the record of the prior proceedings as well as new evidence presented in connection with Mr. Brown's second application.

Id. at 74. The court found that "by reviewing the case on its merits and considering the additional evidence submitted in support of the plaintiff's claim," id., the ALJ constructively reopened the claim. See also Scott, 1995 WL 600498, at *2 (distinguishing case from those in which ALJs did not invoke or apply res judicata and instead proceeded to decide subsequent application on the merits); Passopulos v. Sullivan, 976 F.2d 642, 646 (11th Cir. 1992) (the Eleventh Circuit "has suggested that the Secretary's final decision will be deemed reopened if the ALJ does not apply res judicata and bases an ultimate determination on a review of the record in the prior application." (citing Cherry v. Heckler, 760 F.2d 1186, 1189 (11th Cir. 1985))).

The ALJ did not hold a hearing and did not evaluate the evidence on the merits. Contrary to plaintiff's assertions, the ALJ's mention of notations in the VAMC records that Allen was working after his date last insured is not enough to constitute an effective reopening of Allen's second DIB application. Compare the facts of this case to those in which constructive reopening was found. For instance, in Jelinek v. Heckler, 764 F.2d 507, 508 (8th Cir. 1985), the court held judicial review was proper where the ALJ "proceeded to reconsider Jelinek's case on the merits

immediately after concluding Jelinek's earlier application could not be reopened." In his decision, the ALJ found that Jelinek was not disabled under the Act because he retained the residual functional capacity to perform light work; that Jelinek's complaints of pain were not persuasive in light of the evidence of record and claimant's activities; and that the alleged pain was not sufficiently severe as to prevent Jelinek from engaging in substantial gainful activity. Id. In Barton v. Secretary of Health & Human Services, 683 F. Supp. 1024 (D.S.C. 1988), the court found that "the ALJ could have properly denied plaintiff's 1981 application on *res judicata* grounds," but instead, "he chose to deny plaintiff's 1981 application on the merits," thereby waiving the res judicata defense. Id. at 1028. In that case, the notice of hearing sent to Barton stated that one issue to be resolved by the ALJ at the administrative hearing was whether plaintiff was disabled as of the dates of his three applications for benefits. Id. at 1030. At the hearing, the ALJ made references to plaintiff's previous applications, admitted 38 exhibits into evidence (some concerning the prior two applications), and the examination of plaintiff focused on evidence concerning his earlier applications. Id. The court held that "the ALJ implicitly reopened plaintiff's 1978 DIB application by considering all of the evidence presented and ruling on the merits." Id. Additionally, in Ware v. Secretary of Health & Human Services, 638 F. Supp. 892, 895 (D.D.C. 1986), the court held the ALJ had reopened Ware's prior claim by holding a full hearing on the merits, introducing 23 exhibits into evidence, taking testimony and hearing arguments, and issuing a five page single-spaced opinion that addressed regulations concerning widow's benefits, the subject of her prior application; an evaluation of the evidence; and a list of administrative findings. Likewise, in Reinhart v. Schweiker, 590 F. Supp. 78, 80 (W.D. Mich. 1984), the court found that the ALJ had effectively reopened a prior proceeding where the ALJ considered new evidence in addition to medical records which had been available

at the time of the initial determination; the notice of the hearing stated it involved both applications; and the ALJ decided plaintiff's application on the merits dating back to plaintiff's original onset date of disability. See also Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996) (ALJ's examination of conflicting vocational expert testimony from two prior hearings did not constitute reopening, but determination that the other two ALJs had mischaracterized Wolfe's educational level did constitute a reopening, as by doing so, the ALJ "went beyond evaluating evidence for the purpose of making a reasoned determination of its *res judicata* effect"); Purter v. Heckler, 771 F.2d 682, 695 (3d Cir. 1985) (in case where ALJ mentioned neither res judicata nor discussed whether it should reopen Purter's previous claim, and where ALJ gave claimant a full hearing on the entire claim, received thirty exhibits into evidence, and issued a full opinion disposing of all of Purter's claims on the merits, the court held that "the Secretary's actions in connection with [the] application were tantamount to a reopening"); Robertson v. Barnhart, No. 4:06CV00022, 2006 WL 3526901, at *4 (W.D. Va. Dec. 1, 2006) (finding claim had been reopened where ALJ considered all the evidence concerning plaintiff's depression and mental testing and made the determination that plaintiff's disability commenced June 15, 2004 and not earlier), adopted by Memorandum Opinion & Order, Dkt. # 20 & 21 (W.D. Va. Mar. 13, 2007).

Unlike the cases cited above, the ALJ in the instant case expressly declined to reopen Allen's prior claim and applied res judicata in bar of his third application. He did not hold a hearing in which he discussed the merits of Allen's prior claim(s). He did not consider in detail the medical evidence or make a determination on the merits.

Nor did the Commissioner take any action in this case that is tantamount to a reopening. In Cleaton v. Secretary, Department of Health & Human Services, 815 F.2d 295 (4th Cir. 1987), the Fourth Circuit found that the Secretary had reopened Cleaton's claim by considering it on the

merits, even though the ALJ had applied res judicata. In response to Cleaton's request that his 1980 case be reopened, the Secretary, "in purporting to refuse reopening," stated as follows:

> We have determined that you are not entitled to disability insurance benefits because you do not meet the disability requirement of the law. In reaching this decision, we considered how much your condition has affected your ability to work. After carefully studying your records, including the medical evidence and your statements, and considering your age, education, training, and experience, it has been determined that your condition is not disabling within the meaning of the law.

Id. at 298. In response to Cleaton's request for reconsideration, the Secretary, "again purporting to refuse to reopen," stated:

> Upon receipt of your request for reconsideration we had your claim independently reviewed by a physician and disability examiner in the State agency which works with us in making disability determinations. The evidence in your case has been thoroughly evaluated; this includes the medical evidence and the additional information received since the original decision. We find that the previous determination denying your claim was proper under the law. The reverse of this notice identifies the legal requirements for your type of claim.

Id. The ALJ "did not discuss the Secretary's consideration of Cleaton's claim on the merits in ruling on the requests to reopen," and instead denied Cleaton's request on res judicata grounds and held Cleaton had not established good cause to reopen. Id. The Fourth Circuit nevertheless held that:

> Since the Secretary's treatment of Cleaton's April 2 request for reopening and subsequent request for reconsideration fits squarely into the pattern of reopening an otherwise final determination on its merits, we reverse the district court's dismissal of Cleaton's appeal and remand with instructions to review the Secretary's denial of Cleaton's application.

Id. at 298-99 (citing McGowen, 666 F.2d at 65).

Unlike in Cleaton, the Commissioner's denials of Allen's third DIB application do not fit this same pattern of reopening a final determination on the merits. The initial denial stated that Allen did "not qualify for benefits because this application concerns the same issues which were decided when a earlier claim was denied." (R. 20.) Additionally, upon reconsideration, the Commissioner again denied Allen's application because it "concerns the same issues which were decided when an earlier claim was denied." (R. 15.) As discussed above, the ALJ denied Allen's request for a hearing on res judicata grounds. (R. 10.) And the Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's dismissal dated November 3, 2009." (R. 1.) Thus, the Commissioner did not constructively reopen Allen's prior claim.

## C.

Finally, Allen argues on brief that "because the plaintiff's 2009 [third] application was filed within 12 months of the denial of his 2007 [second] application and new and material evidence was submitted with the 2009 application, the plaintiff's claim could have been reopened for any reason," and thus should have been reopened pursuant to 20 C.F.R. § 404.988. Pl.'s Mem. In Support of Mot. for Remand, Dkt. # 34, at 4. Even assuming Allen's third application could be construed as a request to reopen his second DIB claim, nothing in the regulations requires the Commissioner to reopen a claim at the request of a claimant within 12 months. Rather, the regulations provide that a decision *may* be reopened "[w]ithin 12 months of the date of the notice of the initial determination, for any reason," or within four years if there is good cause to reopen the case.[4] 20 C.F.R. § 404.988(a), (b). Indeed, in Monger v. Bowen, 817 F.2d 15 (4th Cir. 1987), the Fourth Circuit rejected the district court's finding that § 404.988 imposed a duty on the Commissioner to reopen a claim within a year of the notice of the initial

---

[4] This regulation further provides that a decision may be reopened at any time if certain criteria are met, none of which apply in this case. 20 C.F.R. § 404.988(c).

19

determination. The court noted that the operative word in § 404.988 is "may," and both subsections (a) and (b) "are subject to the discretionary 'may.'" Id. at 18. Thus, the decision to reopen a claim within 12 months is discretionary, not mandatory. See also Blackwell v. Astrue, No. 8:07-1084-TLW-BHH, 2008 WL 4200302, at *1 (D.S.C. 2008) (finding Monger "holds Section 404.988(a) imposes no absolute duty on the Commission to reopen a benefits determination").

### III.

For these reasons, the court finds that res judicata was properly applied and the court lacks jurisdiction to review the Commissioner's decision not to reopen Allen's prior claim and to apply res judicata in bar of his third DIB application. As such, the Commissioner's Motion for Summary Judgment (Dkt. # 31) is **GRANTED,** plaintiff's Motion for Remand (Dkt. # 33) is **DENIED,** and this matter is hereby **DISMISSED** from the active docket of the court.

An appropriate Order will be entered.

Entered: May 29, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge